UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERTO DEL VALLE[1],

                Plaintiff,

v.

COMMISSIONER,

                Defendant.

**Hon. Hugh B. Scott**

**17CV1158**

**CONSENT**

**Order**

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 18 (plaintiff), 23 (defendant Commissioner)). Having considered the Administrative Record (Docket No. 7), the papers of both sides (Docket Nos. 18, 23, 24), this Court reaches the following decision on the pending motions (Docket Nos. 18, 23).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

References noted as "[R. __]" are to the certified record of the administrative proceedings, filed with this Court (Docket No. 7).

---

[1] Court Clerk is to correct spelling of plaintiff's last name to "Del Valle," see Docket No. 1, Compl. at 1; Docket No. 7, Admin. Record at 174, 175.

The plaintiff ("Roberto Del Valle" or "plaintiff") filed an application for disability insurance benefits on April 21, 2014 [R. 10]. That application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case <u>de novo</u> and concluded, in a written decision dated February 14, 2017, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on September 15, 2017, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on November 10, 2017 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 18, 23), and plaintiff duly replied (Docket No. 24). This case was scheduled for oral argument and a status conference on February 21, 2019 (Docket No. 25), but due to the failure to enact appropriations, the proceedings were stayed (Docket No. 26). Upon further consideration, this Court then determined that the motions could be decided on the papers.

**FACTUAL BACKGROUND**

Plaintiff, a 46-year-old (as of the claimed onset date of February 1, 2014) with a tenth-grade education, last worked as a paint sprayer in an auto shop, window restorer, and mold cutter (Docket No. 18, Pl. Memo. at 4; [R. 41, 59-60, 71-80, 178-216]). The vocational expert later found that these occupations require medium exertion but plaintiff claimed he performed them at a light exertion level [R. 21]. The ALJ later found that plaintiff was unable to perform any past relevant work [R. 21]. Plaintiff reported to consultative examiner Dr. Santarpia that he was laid off in August 2013 and was reported unable to work due to his legs [R. 353].

Plaintiff claims the following impairments deemed severe by the ALJ: obesity, coronary artery disease, persistent congestive heart failure, chronic diastolic heart failure, right ankle fracture with ongoing residuals, osteoarthritis and depression [R. 12]. As for his obesity, plaintiff testified that he weighed 347 pounds [R. 16], once weighed 345 pounds and was 5'9" tall in July 2014 [R. 349, 18; cf. R. 16 (testified he was 5'8")] he had a body mass index (or "BMI") on July 29, 2016 equaling 49 which is deemed to be morbid obesity [R. 685, 689]. Plaintiff later testified on September 2016 that he weighed 330 pounds and had lost 30 pounds since his heart surgery in July [R. 17].

Plaintiff also claims low back pain as a severe impairment [R. 13] but the ALJ noted that plaintiff completed physical therapy in August 2015 and reported not having pain and that his back was doing well [R. 13, 861]. Thus, the ALJ did not deem this condition to be severe [R. 13].

## MEDICAL AND VOCATIONAL EVIDENCE

The ALJ found that plaintiff's severe impairments did not meet or exceed the relevant Listings [R. 13-14], concluding plaintiff's condition did not meet Listings 1.02 (major dysfunction of a joint for ankle or osteoarthritis), 4.02 (chronic heart failure), 4.04C (coronary heart disease), 12.04 (depressive disorder); obesity did not meet Listings 1.00Q (musculoskeletal), 3.00I (respiratory), or 4.00F (cardiovascular) [R. 13-14]. As for plaintiff's claimed mental impairment, the ALJ concluded plaintiff did not meet Listing 12.00 "Paragraph B" or "Paragraph C" criteria, finding that plaintiff had only mild or moderate limitations in the "Paragraph B" criteria [R. 14-15]. As for "Paragraph C" criteria, the ALJ concluded that these criteria were not met, since the record did not show that plaintiff had only a marginal adjustment

to changes in plaintiff's environment or to demands not in plaintiff's daily life [R. 15]. At the Fourth Step of the five-step analysis (described below), the ALJ found plaintiff's claims of depression were mitigated by his failure to seek treatment [R. 20].

Plaintiff had heart surgery on July 11, 2016 [R. 602]. His cardiac surgeon, Dr. Janerio Aldridge, in the discharge orders of July 18, 2016, opined that plaintiff's activity be limited to lifting no more than five pounds [R. 604, 877, 18, 20]. The discharge plan limited plaintiff's activities to avoid extreme temperatures, not to smoke, drink alcohol, take tranquilizers or medication not prescribed by the surgeon [R. 604, 877, 20]. Dr. Aldridge also ordered plaintiff not to "travel, drive or return to work till your surgeon clears" [R. 604, 877, 20-21]. The ALJ, however, gave little weight to that opinion because it was time limited opinion following surgery and during plaintiff's recovery [R. 20-21].

On July 29, 2016, plaintiff had a post-operative follow up examination with PA Mary Murphy [R. 876-77, 19, 21]. Plaintiff felt well since his heart surgery, had no new complaints [R. 876, 19] denies any pain and is doing well [R. 876, 877]. Plaintiff then was advised to avoid heavy lifting for eight weeks, of nothing more than ten pounds and was not to drive for four weeks from date of surgery (to mid-August 2016) ([R. 877, 19]; see Docket No. 23, Def. Memo. at 11). Ms. Murphy made no opinion about plaintiff's ability to return to work. The ALJ, however, gave limited weight to Ms. Murphy's opinion because it was time limited after plaintiff's heart surgery [R. 21].

At the September 14, 2016, hearing, plaintiff testified that he had pain, fatigue, cardiac issues, and required rest periods, exertional limitations, and use of hands limitations (Docket No. 24, Pl. Reply Memo. at 8; [R. 41-70, 51 (plaintiff's testimony)]). Plaintiff testified that his

4

heart surgery recovery was expected to take two years and his next cardiology appointment is October 11, 2016 (Docket No. 24, Pl. Reply Memo. at 8; [R. 51, 17]). Looking at the medical evidence, the ALJ found that this record failed to provide support for plaintiff's alleged disabling symptoms and limitations [R. 18]. The ALJ then concluded that plaintiff's statements about that intensity, persistence, and limiting effects of plaintiff's impairments "are not entirely consistent with the medical evidence and other evidence in the record for the reasons stated in this decision" [R. 20], that no objective medical evidence supports some of plaintiff's allegations [R. 20].

The ALJ found that plaintiff had a residual functional capacity to perform sedentary work [R. 15]. The ALJ deemed plaintiff capable of occasionally climbing ramps and stairs; plaintiff could never climb ladders, ropes, and scaffolds; all of plaintiff's ambulation would need to be performed with assistance of cane [R. 15]. Plaintiff could occasionally balance and stoop; never kneel, crouch, and crawl; no work at unprotected heights or around dangerous machinery; frequent but not constant fine and gross manipulation with the right upper extremity and limited to simple routine tasks [R. 15]. Based on this finding and the occupations the vocational expert identified as plaintiff's past relevant work, the ALJ concluded that plaintiff cannot perform this past work [R. 21]. Applying additional limitations to plaintiff's residual functional capacity, the vocational expert opined that a hypothetical claimant with plaintiff's condition, age, and experience could work as a document preparer, printed circuit clerk, and surveillance system monitor, each sedentary exertion occupations [R. 22]. As a result, the ALJ held that plaintiff was not disabled [R. 23].

**DISCUSSION**

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the

national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala,

7

37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

Pertinent to this case is the treating physician's rule (as of April 2014)[2], wherein a treating physician's opinion should be given controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is not inconsistent with the other substantive evidence of record, 20 C.F.R. § 404.1527(c)(2) (2014) (Docket No. 19, Def. Memo. at 20-21). If not given controlling weight, the ALJ must provide good reasons for not crediting it, McCarthy v. Colvin, No. 13CV6467, 2014 WL 6065675, at *7 (W.D.N.Y. Nov. 13, 2014) (Telesca, J.) (Docket No. 14, Pl. Memo. at 14); see Sanders v. Comm'r of Soc. Sec., 506 F. App'x 74, 77 (2d Cir. 2012) (Docket No. 19, Def. Memo. at 21). If not giving the controlling weight to the treating physician's opinion, the ALJ then needs to consider various factors in assessing that opinion, such as the examining relationship, its extent, medical support for the opinion, its consistency, and the physician's specialization, and other relevant factors, 20 C.F.R. § 404.1527(c) (Docket No. 14, Pl. Memo. at 14).

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. Plaintiff first argues that the ALJ used his own lay opinion rather than medical opinions in the record (Docket No. 18, Pl. Memo. at 15-21). Next, plaintiff faults the ALJ for improperly relying upon the consultative medical examiner

---

[2]The Social Security Administration issued new regulations surrounding the acceptable medical sources and how to consider medical opinions, 82 Fed. Reg. 15,132 (Mar. 27, 2017), 82 Fed. Reg. 5,844 (Jan. 18, 2017), effective for claims filed on or after **March 27, 2017**. Docket No. 19, Def. Memo. at 20 n.2.

8

Dr. Liu's opinion and that of psychological examiner Dr. Santarpia (id. at 19-20). The ALJ also failed to address evidence of plaintiff's cardiac, lumbar, and other impairments at Steps Two and Three (id. at 21-26). In rejecting Dr. Aldridge's opinion, plaintiff concludes that the ALJ creates a gap in the medical record, rendering the ALJ's findings to lack substantial evidence (id. at 26-30).

I.     Opinion of Treating Cardiac Surgeon

At Step Four of the five-step analysis, plaintiff contends that the ALJ did not properly evaluate the medical record, specifically the opinion of treating cardiac surgeon, Dr. Aldridge (Docket No. 18, Pl. Memo. at 16-21). Plaintiff argues that the ALJ did not give good reason for devaluing the opinion of Dr. Aldridge (id. at 15, 16-18, 21). In reply (Docket No. 24, Pl. Reply Memo. at 6), he contends that Dr. Aldridge restricted plaintiff's activities indefinitely (id.; [cf. R. 604]).

Defendant Commissioner responds that Dr. Aldridge's opinion was rendered one week after plaintiff's surgery (Docket No. 23, Def. Memo. at 10; [R. 604]). The ALJ considered this opinion, gave reasons for giving them little weight in formulating the residual functional capacity (Docket No. 23, Def. Memo. at 10), that plaintiff's subsequent medical examinations found plaintiff's condition was "largely normal" following surgery (Docket No. 23, Def. Memo. at 10-11; [R. 18-19, 685, 688, 741, 743-44, 876-77]), with restrictions increasing plaintiff's capacity over time (id. at 11).

As a treating physician's opinion, Dr. Aldridge's opinion generally is entitled to controlling weight unless it is inconsistent with other substantial evidence or is not supported by medical findings, Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015). Dr. Aldridge rendered his

9

follow up activities restrictions one week after plaintiff's surgery ([R. 604]; Docket No. 23, Def. Memo. at 10). The ALJ did evaluate Dr. Aldridge's opinion, giving it little weight because it was rendered a week after plaintiff's surgery. While plaintiff argues that the doctor "restricted activities indefinitely" (Docket No. 24, Pl. Reply Memo. at 6), review of that opinion does not appear to have any express duration. As defendant notes (Docket No. 23, Def. Memo. at 11), Dr. Aldridge did not specify the duration of his discharge instructions. These instructions also called for follow up appointments [R. 604, 877], plaintiff was examined later in July 2016 by Ms. Murphy. Murphy recommended changes in the limitations found by Dr. Aldridge, after noting plaintiff's post-surgical improvement [R. 876-77]. The ALJ gave limited weight to both opinions because the ALJ deemed them time limited. The ALJ **was correct in this assessment**. These opinions are post-operative instructions without any indication of permanence. Plaintiff's objection (and his motion) on this ground is **denied**.

II.    Reliance on Consultative Opinions

Plaintiff next argues that the ALJ inappropriately relied upon the opinions of consultative examiners Dr. Liu and psychologist Dr. Santarpia (Docket No. 18, Pl. Memo. at 17-19, 19-20). He contends that the ALJ favored Dr. Liu's "vague" opinion over the opinion of treating cardiologist, Dr. Aldridge, with Dr. Aldridge's opinion the sole opinion on plaintiff's cardiac condition (id. at 17).

Dr. Liu examined plaintiff on July 18, 2014, prior to plaintiff's 2016 heart surgery and found that plaintiff medically needed a cane, concluding that plaintiff had moderate limitation for prolonged walking, bending, and kneeling [R. 349, 352, 18-19]. The ALJ gave significant

weight to this opinion base on the examination and program knowledge ([R. 20]; Docket No. 23, Def. Memo. at 11-12).

Dr. Santarpia found on examination on August 7, 2014, that plaintiff's manner of relating and overall presentation was adequate [R. 353-54, 19-20]. She opined that plaintiff would have moderate limitation with learning new tasks and performing complex tasks independently [R. 355, 20]. The ALJ also gave significant weight to Dr. Santarpia's opinion based upon the examination and program knowledge, as well as that opinion being consistent with the whole record and plaintiff's testimony [R. 21]. Plaintiff faults the ALJ for not adopting the more restrictive limitations in learning new tasks from Dr. Santarpia's assessment (Docket No. 18, Pl. Memo. at 19). He notes Dr. Santarpia was internally inconsistent by finding that stress-related problems may at times interfere with his ability to function daily but did not offer limitations (id. at 20; [cf. R. 355]). Dr. Santarpia noted plaintiff had mild impairment due to limited education [R. 354], but plaintiff objects that it was unclear how the lack of treatment or what treatment, would resolve this limitation (Docket No. 18, Pl. Memo. at 20).

Defendant responds that the ALJ properly evaluated all opinion evidence (Docket No. 23, Def. Memo. at 9, 11-12, 14-16), with the ALJ acknowledging plaintiff's cardiac condition which arose after Dr. Liu's evaluation (id. at 11-12). As for plaintiff's mental condition, defendant points out that plaintiff did not seek treatment for his depression (id. at 13).

As noted above in discussing Dr. Aldridge's opinion, the duration of plaintiff's post-surgery limitation is not stated by that doctor. The ALJ factored in plaintiff's medical condition after Dr. Liu's opinion such that the ALJ did not exclusively rely upon the potentially stale evaluation. Plaintiff's motion on this point is **denied**.

As for plaintiff's mental evaluation, the ALJ relied heavily upon Dr. Santarpia's evaluation, while also noting the state agency's opinion of Dr. Butensky [R. 20, 91] (cf. Docket No. 23, Def. Memo. at 14 n.2), that found plaintiff had mild limitations but opined that plaintiff's impairments were not severe [R. 20, 95], these findings based upon Dr. Santarpia's evaluation [R. 95]. The ALJ gave this state agency evaluation little weigh because the agency doctor did not examine plaintiff [R. 21]. The ALJ's findings turn on, however, plaintiff's failure to seek treatment for his claimed depression [R. 20]. This is a sufficient basis to deny a limitation based upon depression. This Court agrees with defendant (Docket No. 23, at 15-16) that Dr. Santarpia was not internally inconsistent in not stating limitations that arose from the impact of stress on plaintiff's daily activities. On this ground, plaintiff's motion also is **denied**.

III. Other Impairments Not Deemed Severe

Plaintiff also contends at Steps Two and Three that the ALJ failed to recognize as severe plaintiff's cardiac and lumbar impairments (Docket No. 18, Pl. Memo. at 21-26). Defendant responds that the ALJ fully accounted for plaintiff's cardiac and lumbar conditions (Docket No. 23, Def. Memo. at 18-19; [R. 15-21]).

As for impairments consideration at Step Two, plaintiff bears the burden of establishing that he or she has a severe impairment, "which is 'any impairment or combination of impairments which significantly limits [the claimant's] ability to do basic work,'" Miller v. Berryhill, No. 16CV6467, 2017 U.S. Dist. LEXIS 153578, at *20 (W.D.N.Y. Sept. 20, 2017) (Telesca, J.); see 20 C.F.R. § 404.1520(c). An impairment or combination of impairments found to be "not severe" when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an

individual's ability to work, SSR 85-28, 1985 SSR LEXIS 19 (1985). In this Circuit, this Step Two severity analysis "may do no more than screen out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). Despite this level of screening at Step Two, plaintiff still has the burden to show that her impairments or combination of impairments significantly limited her ability to perform work. At Step Three, plaintiff has the burden of showing that her impairments meet or exceed impairments listed in Social Security regulations.

This Court agrees with defendant (see Docket No. 23, Def. Memo. at 16-18); the ALJ did consider at Steps Two and Three of the analysis as severe impairments plaintiff's cardiac and lumbar conditions [R. 12, 13, 13-14], deeming severe plaintiff's heart condition at Step Two, considering but rejecting plaintiff's lumbar condition at that Step. As for the lumbar condition, the ALJ said that plaintiff sought physical therapy in the spring and summer of 2015 [R. 861, 13] and on discharge plaintiff said that he was doing well [R. 13, 861]. From this, the ALJ concluded that there was no medical signs or laboratory findings to substantiate his claimed back impairment [R. 13]. Plaintiff's opposition rests (as discussed above) on the ALJ's apparent reliance upon the findings of Dr. Liu (see Docket No. 24, Pl. Reply Memo. at 4) without specifically addressing how his lumbar condition was disregarded.

As for plaintiff's cardiac limitation, in addition to deeming the condition severe the ALJ reviewed at Step Three plaintiff's heart condition as compared with Listing 4.02 for chronic heart failure and Listing 4.04C for coronary artery disease [R. 14]. Thus, the ALJ did analyze the evidence of his cardiac condition.

IV.   Gap in Medical Record

Absent Dr. Aldridge's opinion, plaintiff argues that the medical record is incomplete and the ALJ makes her findings with gaps in the record (Docket No. 18, Pl. Memo. at 26-30). Plaintiff argues that the ALJ had a duty to determine from Dr. Aldridge whether his post-operative instructions were of a limited duration and what functional limitations remain (id. at 28).   Defendant counters that the ALJ had fully developed the record (Docket No. 23, Def. Memo. at 18-19).   As plaintiff points to his request to the ALJ for time to supplement the record from Dr. Aldridge ([R. 292-295, 301, 302, 79]; see Docket No. 23, Def. Memo. at 18), defendant argues that the ALJ did hold open the record but plaintiff failed to supplement ([R. 302]; Docket No. 23, Def. Memo. at 18-19).   What later medical evidence in the record, however, showed plaintiff's improvement after heart surgery (Docket No. 23, Def. Memo. at 19; [R. 18-19, 685, 688, 741, 743-44, 876-77]).   Defendant concludes that the ALJ's duty to develop the record is finite (see Docket No. 23, Def. Memo. at 19, citing Tatelman v. Colvin, 296 F. Supp. 3d 608, 612 (W.D.N.Y. 2017) (Larimer, J.)).

Plaintiff may have a point.   The only ambiguity here is whether the post-op instructions from Dr. Aldridge was limited or remain.   When plaintiff had the hearing, it was months after surgery.   The hearing concluded with the ALJ awaiting additional records from Dr. Aldridge [R. 79] but plaintiff had not gained further records from Dr. Aldridge.   The ALJ closed the record after giving plaintiff the opportunity (at his request for additional time) to supplement.

Where there is a gap in the record, the ALJ must affirmatively develop the evidence, e.g., Scott v. Astrue, No. 08CV910, 2010 U.S. Dist. LEXIS 64790, at *23 (W.D.N.Y. June 11, 2010) (McCarthy, Mag. J.) (Report & Rec.); Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996).   The

ALJ's duty to develop the record is not infinite and not required when the evidence at hand is sufficient to determine disability, Tatelman, supra, 296 F. Supp. 3d at 612 (quotation and citations omitted). Plaintiff here was given additional time to supplement Dr. Aldridge's evidence and, when plaintiff failed to supplement or ask for additional time, closed the record. Plaintiff is not arguing inability to submit additional records or suggest that Dr. Aldridge would say that his findings were indefinite, but there is the ambiguous instruction from Dr. Aldridge. What the post-operative record presented here shows plaintiff's improvement ([R. 876-77, 741, 744, 745, 748]; see also Docket No. 18, Pl. Memo. at 15; Docket No. 23, Def. Memo. at 5-6), save his own unsubstantiated testimony [R. 51] that his recovery from the cardiac surgery would take two years. At Step Four, plaintiff bears the burden of proof to show that he is unable to perform past relevant work, see, e.g., Daniels v. Colvin, No. 13CV89, 2014 U.S. Dist. LEXIS 72719, at *25-27 (W.D.N.Y. May 28, 2014) (Curtin, J.), that a gap exists, see Hayes v. Colvin, No. 11CV835, 2014 U.S. Dist. LEXIS 71138, at *23 (Telesca, J.) (the onus is on plaintiff to bring everything to the agency's attention that he is disabled, quoting 20 C.F.R. § 404.1512(a)); Daniels, supra, 2014 U.S. Dist. LEXIS 72719, at *23. He was given the opportunity to supplement but failed to do so. The ALJ was not obliged to develop this record where plaintiff has not provided additional medical record. Plaintiff's motion on this ground is **denied**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 18) judgment on the pleadings is **denied**, and defendant's motion (Docket No. 23) for judgment on the pleadings is **granted**. Thus, the decision of the defendant Commissioner is **affirmed** pursuant to sentence four of

42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

    So Ordered.

                                                              *s/Hugh B. Scott*
                                                               Hon. Hugh B. Scott
                                                   United States Magistrate Judge

Buffalo, New York
February 15, 2019